# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF INDIANA
### HAMMOND DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | NO. 2:15-CR-72-PPS |
| | ) | |
| PETER SALINAS, | ) | |
| | ) | |
| Defendant. | ) | |

### OPINION AND ORDER

This matter is before me on Salinas' two pro se motions entitled "Emergency Motion Pro-se for Release on Home Confinement Due to the Ongoing Institutional Pandemic at Coleman Federal Correctional Complex." [DE 2692, 2701.] Salinas is a 37 year old male who claims he suffers from asthma, Tourette Syndrome, and OCD, and he is currently incarcerated at Coleman Low FCI in Sumterville, Florida. In accordance with my order dated July 21, 2020, the Federal Defender's Office filed a notice stating they would be unable to assist the defendant. [DE 2696, 2699.] The government filed a response in opposition to Salinas' motion for release [DE 2717] and a supplemental response with attached medical documents. [DE 2733.] Salinas filed a reply which was docketed as a motion in opposition to the government's response. [DE 2724.]

Let's start by reviewing the procedural background of this case. On November 14, 2017, Salinas was charged in a fourth superseding indictment with RICO conspiracy and a drug conspiracy involving the Latin Kings street gang. [DE 1167.] Salinas pleaded guilty on March 14, 2018 to Count 1, the RICO conspiracy count, in exchange

for the government dismissing the narcotics conspiracy. [DE 1399.]

During the sentencing phase, it came out that Salinas rose to the level of Regional Enforcer for the Indiana Region of the Latin Kings.  [PSR, DE 1569, ¶ 10.] Among other bad conduct, Salinas had a co-defendant, Marquis Medellin, beaten by other co-defendants for failing to pay a drug debt to another member of the Latin Kings. [*Id.*] Salinas dealt large quantities of cocaine as part of his role in the street gang. [*Id.* ¶¶ 20-21.]

 On July 24, 2018, I sentenced Salinas to 78 months imprisonment to be followed by 2 years of supervised release.  [DE 1719.]  Salinas' final offense level was 28 and he had a criminal history category of I.  Salinas is currently serving his sentence at FCI Coleman Low with a projected release date of February 9, 2022. [DE 2717 at 4.]

In support of his motion, Salinas argues there is a crisis at Coleman federal correctional complex due to the COVID-19 epidemic and he requests release on home confinement. [DE 2692, 2701.][1]  Salinas also claims he suffers from "Astmas, Turrets Syndrom and OCD" [sic] and that COVID-19 cases are five times higher in prison, and the death rate in prison is three times higher than the general population. [DE 2692, 2701, at 2.]

The instant request is for compassionate release under the First Step Act.  Salinas bears the burden of showing he is entitled to compassionate release.  *See United States v.*

---

[1] The first four pages of Salinas' two motions are identical.  The second filing, DE 2701, additionally contains three letters in support of release from Salinas' family members.

2

*Greenhut*, No. 2:18-CR-00048-CAS-1, 2020 WL 509385, at *1 (C.D. Cal. Jan. 31. 2020).

Compassionate release is "an extraordinary and rare event." *United States v. Mangarella*,

3:06-cr-151-FDW-DCK-3, 2020 WL 1291835, at *2-3 (W.D.N.C. Mar. 16, 2020).

Before I get into the merits of Salinas' claim, I need to first look into the

exhaustion requirement. The First Step Act provides that I can consider a motion

directly from the defendant after he "has fully exhausted all administrative rights to

appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or

the lapse of 30 days from the receipt of such a request by the warden of the defendant's

facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A). Salinas does not address

whether he satisfied the exhaustion requirement. And although the government stated

it was checking whether Salinas has exhausted all of his remedies and would report

back shortly, the government did not address the exhaustion requirement in its

supplemental filing. [DE 2717 at 3; DE 2733.] Courts across the country are grappling

over whether the exhaustion requirement may be excused. Without commenting at this

time on whether a failure to exhaust should be excused, even if I consider Salinas'

request on the merits, it should still be denied.

The First Step Act provides that the Court may reduce the term of imprisonment

after considering the factors set forth in section 3553(a), if it finds that "extraordinary

and compelling reasons warrant such a reduction" and that such a reduction "is

consistent with applicable policy statements issued by the Sentencing Commission." 18

U.S.C. § 3582(c)(1)(A)(i). In other words, the compassionate release statute directs me to

make three considerations: (1) whether a reduction is consistent with the factors listed in section 3553(a); (2) whether extraordinary and compelling reasons warrant a sentence reduction; and (3) whether a reduction would be consistent with the Sentencing Commission's policy statements.  All three considerations weigh against release in this case.

The section 3553(a) factors, which are well-known by this point, include the nature and circumstances of the offense and history and characteristics of the defendant; the need for the sentence to reflect the seriousness of the offense, afford adequate deterrence to criminal conduct, and protect the public from further crimes of the defendant; and the kinds of sentences and sentencing range for the applicable category of offense committed.  18 U.S.C. § 3553(a).  Before I address whether "extraordinary and compelling reasons" warrant a reduction in Salinas' sentence, I will look to the factors set forth in section 3553(a), as I did in my initial sentencing of Salinas.

Salinas rose to the leadership level of being the Enforcer for the entire Indiana region of a large gang that was responsible for huge amounts of violence and drug dealing.  While his criminal history category was only I, the PSR indicated that it could have been significantly higher, as he has been arrested at least 16 times. [PSR, ¶¶ 61-63, 68-80.]  The expansive, serious, and dangerous nature of Salinas' offense, including dealing massive quantities of drugs over a long period of time and being in a high position in the Latin Kings does not weigh in favor of his early release.  While I have no way of actually knowing, because I do not have any information regarding Salinas'

4

behavior in prison, I believe that Salinas could still pose a danger to the public.  Finally,

Salinas' projected release date is not until February 9, 2022, which is still some time in

the future.  The Section 3553(a) factors of punishment, deterrence, and promotion or

respect for the law do not warrant release in this case.  *See, e.g., United States v. Marquis*

*Medellin*, 2020 WL 4048139, 2:15-cr-72-PPS (N.D. Ind. July 20, 2020) (denying

codefendant Latin King's request for compassionate release based in part on the

severity of the offense); *United States v. Pena*, 2:15-cr-72-PPS, 2020 WL 3264113 (N.D. Ind.

June 17, 2020) (same).

 In turning to whether there are "extraordinary and compelling reasons [that]

warrant such a reduction" and "that such a reduction is consistent with applicable

policy statements issued by the Sentencing Commission" 18 U.S.C. § 3582(c)(1)(A), I

note that the pertinent policy statement is set forth in the United States Sentencing

Guidelines (USSG) § 1B1.13.  This would allow me to reduce Salinas' sentence if I

determined extraordinary and compelling reasons warrant the reduction, Salinas is not

a danger to the safety of any person or the community, and the reduction is consistent

with the policy statement.  USSG § 1B1.13.  The Sentencing Commission also provided

specific examples of what constitutes an extraordinary and compelling circumstance,

which include, *inter alia*: the defendant is suffering from a terminal illness; the

defendant is suffering from a serious physical or medical condition that substantially

diminishes the ability of the defendant to provide self-care within the environment of a

correctional facility; or other reasons as determined by the Director of the BOP.  USSG §

1B1.13 cmt. n. 1.

Here, Salinas' health issues by themselves do not constitute extraordinary or compelling reasons to reduce his sentence.  In the PSR, Salinas said he suffered from asthma as a child, "but no longer has the condition." [PSR ¶ 92.]  The PSR does not indicate that Salinas has obsessive compulsive disorder or Tourette Syndrome.  According to Salinas' medical records from Coleman, he is in generally good health.  Although it notes that Salinas either currently has or had asthma in the past, Salinas denies any respiratory issues and there are notes that his respiratory system is within normal limits.  [DE 2733-1 at 8, 48, 66, 105.]  The medical records do not refer to any history of mental health issues, and there is no history of Tourette Syndrome or OCD mentioned in the records.  Salinas' health conditions do not impede his ability to provide self-care in the institution and therefore would not, by themselves, justify release.  *See, e.g., United States v. Carpenter*, No. 2:14-cr-309-GEB, 2019 WL 7631396, at *2 (E.D. Cal. Dec. 23, 2019) (denying compassionate release where the records "evince that [the prisoner's] medical conditions are not life-threatening and should not limit her self-care ability."); *United States v. Willis*, 382 F.Supp.3d 1185, 1188 (D. N.M. 2019) (quotation omitted) ("In exercising discretion under § 3553(a) and the First Step Act, most courts treat compassionate release due to medical conditions as . . . a rare event."); *United States v. Dusenbery*, No. 5:91-cr-291, 2019 WL 6111418, at *2 (N.D. Ohio Nov. 18, 2019) (denying compassionate release to defendant suffering from multiple conditions, including potential kidney failure, because they did not "impair his ability to provide

6

self-care within the correctional facility.").

The main question here is whether Salinas' health, along with the enhanced risk of contracting COVID-19 at Coleman Low FCI, justifies release.  Even considering Salinas' claimed asthma, Tourette Syndrome, and OCD in the midst of the COVID-19 pandemic, it still does not meet the extraordinary and compelling standard in this case. According to the Centers for Disease Control and Prevention (CDC), people with certain underlying medical conditions, including moderate to severe asthma, "might be at an increased risk for severe illness from COVID-19." Https://www.cdc.gov/coronavirus/ 2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last viewed August 27, 2020).  In this case, because there is hardly any mention of Salinas' asthma in his medical records, and his respiratory system seems to be healthy, I don't think his condition would be considered "moderate to severe" asthma.  *See, e.g., United States v. Council*, No. 1:14-CR-14-5-TLS-SLC, 2020 WL 3097461, at *6 (N.D. Ind. June 11, 2020) (denying motion for compassionate release where asthma did not seem serious, and citing similar cases therein).

Regarding Salinas' alleged Tourette Syndrome and OCD, these are not medical conditions that the CDC has assigned as having a greater risk of severe illness with COVID-19.  Even if Salinas does suffer from these mental illnesses, I don't see why they would make him especially vulnerable to COVID-19.  *See, e.g., United States v. Muhlenhardt*, No. 14-cr-162 SRN/JJK, 2020 WL 4697112 (D. Minn. Aug. 13, 2020) (denying compassionate release where petitioner had several health issues including

asthma, Tourette Syndrome, and OCD).

I am cognizant that there is a high rate of infection of COVID-19 at Coleman Low.  According to the government, at the time of its response, there are 182 confirmed active cases of COVID-19 among inmates, 21 among staff, with 1 inmate death and no staff deaths, and 11 inmates recovered and 2 staff recovered. [DE 2717 at 7.] Moreover, I recognize that these numbers may constantly be changing and may not even be accurate.  According to Salinas, a second inmate died at Coleman, and the BOP has converted the visitation room and chapel into triage units. [DE 2724 at 1.]

Salinas criticizes the institution's handling of the virus.  But Coleman Low is engaged in strenuous efforts to protect inmates against the spread of COVID-19 including making soap widely available, cleaning and disinfecting more frequently, issuing protective face masks to all inmates and staff, implementing new screening and testing procedures, quarantining new inmates for 14 days, treating and isolating those inmates who have contracted it, and separating asymptomatic inmates who have tested positive or been in contact with symptomatic inmates.  [DE 2717 at 5-6.]  While I am certainly sympathetic with Salinas' situation and his concern about potentially becoming infected with COVID-19 from someone else at the facility, I do not think this is an extraordinary and compelling reason to justify release.  S*ee United States v. Melgarejo*, No. 12-cr-20050, 2020 WL 2395982, at *3 (C.D. Ill. May 12, 2020) ("the mere presence of COVID-19 in a particular prison (or the BOP generally) cannot justify compassionate release - if it could, every inmate in that prison could obtain release.");

8

*United States v. Collins*, No. 14-cr-30038, 2020 WL 2301217, at *2 (C.D. Ill. May 8, 2020) (denying motion for compassionate release, recognizing "the COVID-19 pandemic does not warrant the release of every federal prisoner with health conditions that makes him more susceptible to the disease.").

Issues surrounding the COVID-19 pandemic are changing rapidly and new developments are occurring almost every day. At this point, based upon all the facts before me, I do not think that Salinas' sentence should be reduced and he should be released on home confinement. If factual developments warrant a reconsideration, Salinas is free to exhaust his administrative remedies again, and file a new motion under § 3582(c)(1)(A).

## Conclusion

Despite the severity of the COVID-19 pandemic, Salinas' two motions entitled "Emergency Motion Pro-se for Release on Home Confinement Due to the Ongoing Institutional Pandemic at Coleman Federal Correctional Complex" [DE 2692, 2701] are DENIED. The motion in opposition to the government's response [DE 2724] is also DENIED. Salinas has not shown the factors under section 3553(a) warrant release or that extraordinary and compelling reasons warrant such a reduction under § 3582(c)(1)(A).

SO ORDERED.

ENTERED: September 1, 2020.

 /s/   Philip P. Simon 
PHILIP P. SIMON, JUDGE
UNITED STATES DISTRICT COURT